Brad R. Newberg (*pro hac vice*)
bnewberg@reedsmith.com
REED SMITH LLP
3110 Fairview Park Dr., Ste. 1400
Falls Church, VA 22042
Tel: (703) 641-4200
Fax: (703) 641-4340

Kathyleen A. O'Brien (SBN 94218)
kobrien@reedsmith.com
Dominique H. Pietz (SBN 260716)
dpietz@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
Telephone: (310) 734-5200
Facsimile: (310) 734-5299

Attorneys for Defendants
CAPITOL RECORDS, LLC and EMI
MUSIC MARKETING (a DBA of
Capitol Records, LLC)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY MCCARTHY, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>BRUCE ANTHONY JOHANNESSON, ET AL.<br><br>Defendants. | Case No.: 2:12-cv-02099-MMM (PLAx)<br><br>**DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION FOR AN ORDER EXTENDING THE DISCOVERY CUT-OFF AND DIRECTING PARTIES TO APPEAR FOR THEIR DEPOSITIONS AND TO PRODUCE DOCUMENTS** |

- 1 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

60676818.2

## I. Introduction

Plaintiff James Stonich ("Plaintiff") brought his improper Ex Parte Application ("Application") for the sole purpose of distracting counsel prior to Plaintiff's deposition, which is set for today, April 24, 2013, and the deposition of third party Ned Babb, which is set for tomorrow April 25, 2013. Indeed, Plaintiff and his counsel Allen Hyman ("Mr. Hyman") have failed or refused to appear for Plaintiff's deposition twice, and on April 23, 2013, the day Plaintiff's Application was filed, attempted to postpone and delay Plaintiff's deposition for the third time. When Defendants stated they would seek sanctions if Plaintiff refused to appear for his deposition once again, Plaintiff brought his nonsensical and procedurally improper Application. Plaintiff and his counsel were at all times aware that, when this Application was filed, one lead defendants' counsel was preparing for his deposition, and the other was on a cross-country flight to attend the deposition. Not to mention, there was absolutely no legitimate reason to bring the Application, let alone on an Ex Parte basis.

## II. This Ex Parte Application Was Improperly Brought Before This Court

Plaintiff's Application is unnecessary and improperly brought before this Court.

First, Plaintiff's request that the Defendants be compelled to produce certain documents and appear for depositions should have been brought before the honorable Magistrate Judge Paul L. Abrams and is improperly brought before this Court. See Judge Morrow's Standing Order, ¶ 4 ("Discovery motions: Are to be calendared before the magistrate judge.")

Second, Plaintiff's request for an extension of the discovery cut-off to June 13, 2013, is an improper attempt to circumvent the parties' stipulation filed on April 3, 2013, which requested an extension of the discovery cut-off to June 3, 2013. 2:12-cv-02099-MMM-PLA, Docket No. 153, *Stipulation to Continue Discovery Cut-Off Dates*. This request is in violation of the parties' agreement and is moot by virtue of

- 2 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

the aforementioned stipulation. Plaintiff has presented no reason why the mutually submitted was not sufficient (in light of this stipulation, Plaintiff's request is duplicative and a waste of this Court's time).

### III. Plaintiff Has Not Shown Good Cause to Apply to This Court Ex Parte

An ex parte application must show why the moving party should be allowed to "go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp.488, 492 (C.D. Cal. 1995). Plaintiff must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Plaintiff must also establish that the moving party is without fault in creating the crisis. "Ex Parte applications are not intended to save the day for parties who have failed to present requests when they should have . . ." Id. at 492; *see also In Re Intermagnetics America, Inc.*, 101 BR 191, 193 (C.D. Cal.1989). "Unless the Court in its discretion otherwise allows, no discovery motions shall be filed or heard on an ex parte basis, absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party." Central District Local Rule 37-3.

Plaintiff has made no attempt to demonstrate, let alone demonstrated, "irreparable injury or prejudice not attributable to the lack of diligence of the moving party" as required by Central District Local Rule 37-3 and binding case law. Indeed, there is no threat of irreparable injury as the parties have already submitted a stipulation to extend the discovery cut-off, making his ex parte application to this end unnecessary (not to mention procedurally improper) [Newberg Dec. ¶ 5, 2:12-cv-02099-MMM-PLA, Docket No. 153, *Stipulation to Continue Discovery Cut-Off Dates*] and the depositions which Plaintiff seeks to compel have already been agreed

- 3 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

upon by the parties. Newberg Dec. ¶¶ 28-35, 45-52. Likewise, the parties already agreed on how to handle the production of documents that Plaintiff now seeks to compel. Newberg Dec. ¶¶ 70-76.

### IV. Plaintiff Has No Grounds for His Requests and Cites No Authority In Support of Any of His Contentions

Plaintiff does not cite a single legal authority in the entirety of his Application - not one case and not one statute. Indeed, there is no authority supporting Plaintiff's request that this Court (1) extend the discovery cut-off date, which the parties have already agreed to extend by way of a stipulation that was filed with this Court [*See* 2:12-cv-02099-MMM-PLA, Docket No. 153, *Stipulation to Continue Discovery Cut-Off Dates*]; (2) compel Defendants to attend depositions that they have already agreed to attend, and which are brought subsequent to the discovery cut-off due solely to Plaintiffs' negligence, simply because despite Defendants' agreement to attend these depositions, Defendants have not signed a stipulation and order to this end; and (3) compel Defendants to produce over twenty years of confidential and proprietary financial data, despite the fact that the parties agreed such documents would only be produced if the Court denied Defendants' Motion to Dismiss the claims to which such documents hold relevance. Plaintiffs' Application is without a scintilla of legal support.

#### A. Plaintiff's Request For An Extension of the Discovery Cut-Off Date Is Moot And Improper

The parties have already come to a proposed discovery schedule, and stipulated to an extension of the discovery cut-off, pending this Court's approval. The parties stipulated to a new discovery cut-off date of June 3, 2013, which Plaintiff now attempts to circumvent, by unnecessarily requesting an additional ten days from this Court while the parties' stipulation and proposed order is pending.

- 4 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

### B. Plaintiff's Request That This Court Compel Defendants To Attend Certain Depositions Which They Have Already Agreed To Attend Is Improper

By Plaintiff's own admission, Defendants have agreed to appear for their depositions, in good faith, despite the fact that it was Plaintiff's own neglect that caused these depositions to take place subsequent to the discovery cut-off. Newberg Dec. at 44-52. Despite this agreement on Defendants' part, which is well documented, Plaintiff filed his applicationsimply because Defendants have not entered into a stipulation and proposed order promising to appear. Ex Parte App. 24-28. However, there is no law, and, indeed, Plaintiff has cited no law, holding that Defendants are required to sign such a stipulation and proposed order. Furthermore, there is simply nothing for this Court to compel to this end, as Defendants have already agreed to appear.

### C. Plaintiff's Request That This Court Compel Defendants To Produce Documents In Direct Contravention of the Parties' Prior Agreement

Since this action's inception, Defendants have maintained that all claims should be dismissed to the extent those claims seek relief for any alleged infringement that took place prior to 2008 on the grounds that such relief is barred by the statute of limitations. The parties specifically agreed that, *if the Court denied Defendants' motion*, Defendants would produce financial documents going back 25 years, as Defendants had requested, to the extent such documents exist (many do not). Newberg Dec. at ¶ 73. All parties understood the tremendous burden of searching for and producing over 100,000 pages of documents stretching back over 25 years, and, as a result, agreed that the production would only be necessary if and when the Court denied Defendants' motion. *Id.* at ¶ 75. This agreement was confirmed orally, in writing, and was discussed again at the March 26 meet and confer. *Id.* at 74, Exh. 18 at 31-32, 67-68. In Paragraph 14 of his Declaration, Mr. Hyman suggests, without

- 5 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

saying directly, that the Defendants agreed to produce pre-2008 documents within three weeks of the April 8 hearing on their motion. That was never the case. *Id.* at 76.

## V. Plaintiff's Ex Parte Application Is Just One Example Of Plaintiff's and Plaintiff's Counsel's Sanctionable Behavior

Pages three through five of Plaintiff's Application is comprised of misleading excerpts from emails, which are taken out of context in an attempt to shift the focus from Plaintiff's misbehavior by pointing fingers at Defendants. Indeed, when read in context, it is clear that Defendants have been nothing but accommodating, despite Plaintiff's and Mr. Hyman's attempts to derail the deposition of Plaintiff and other relevant witnesses. Indeed, in an effort to misrepresent the record, Mr. Hyman fails to advise the Court that, with respect to the pre-2008 documents, Mr. Passin stated that in the event the Court denied the pending Motions to Dismiss, he was optimistic that his clients would be able to produce the documents prior to May 3. *See* Declaration of Mark D. Passin at ¶4.

Since January, Defendants have attempted to amicably work out a deposition schedule for all parties. Newberg Dec. ¶¶ 12 – 35, 44-52. Plaintiff and Mr. Hyman have consistently demonstrated that their goal is to engage in gamesmanship that frustrates these efforts, rather than addressing Plaintiffs' dubious claims on their merits. *Id.* Now, at 4pm, on the day before Plaintiffs' deposition is scheduled, cornered by an email trail that evidences Mr. Hymans' evasive maneuvers and Defendants' threats of sanction, Plaintiff filed a procedurally improper *ex parte* application requesting a Court Order on three issues that have previously been resolved by the parties— not to mention the fact that two of these three issues are improperly before this Court. Plaintiff's and Mr. Hyman's Application sends a clear message that they have little respect for the time and resources of this Court, little

interest in resolving their claims on the merits, and primarily seek to stymie this case while they attempt to extract a settlement from Defendants.

This behavior is not unique to the present lawsuit. Mr. Hyman has demonstrated a history of misconduct, and has been sanctioned on numerous occasions. *See, e.g., Fid. Nat'l Fin., Inc. v. Hyman*, 396 Fed. Appx. 472, 473 (9th Cir. 2010) (affirming a district court's finding that Mr. Hyman was liable for contempt and ordering him to pay $39,717.50 in sanctions); *see also Bellagio, LLC v. Horaney*, 319 Fed. Appx. 652, 653-54 (9th Cir. 2009)(affirming a district court's fees and costs order against Mr. Hyman pursuant to 28 U.S.C. §1927); *see also Larin Corp. v. Alltrade, Inc.*, 2008 U.S. Dist. Lexis 65193,*6, *17 (C.D. Cal. July 11, 2008) (finding Mr. Hyman's conduct to be "'unprofessional, unethical and . . . contemptible'" and holding him personally liable for fees pursuant 28 U.S.C. §1927).

## VI. Statement of Facts

The following facts are stated in more detail, attaching exhibits, in the Declaration of Brad D. Newberg filed concurrently herewith. Defendants have attempted to set a discovery schedule for months and, for months, Plaintiff and Mr. Hyman have attempted to derail those efforts. On February 8, 2013, following up on prior requests to set a discovery schedule, Mark Passin ("Mr. Passin"), counsel for Defendants Bruce Anthony Johannesson, Bret Michael Sychak, Robert Harry Kuykendall, Richard Allan Ream and Sweet Cyanide Music, Inc. (collectively, the "Poison Defendants"), e-mailed Mr. Hyman to ask that the parties have a conference call to discuss a potential deposition schedule. Mr. Hyman ignored that communication. Declaration of Brad Newberg attached hereto ("Newberg Dec.") ¶ 9, Exh. 1. Similar communications followed to no avail. In fact, Mr. Hyman ignored all communications on all subjects and did not respond to any attempts to contact him by phone or e-mail from January 29, 2013 to February 18, 2013—a full three weeks—subsequent to which Mr. Hyman resurfaced to request an extension to reply to

- 7 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

discovery and review Defendants' proposed Protective Order. *Id.* at ¶ 10, Exh. 2. Towards the end of Mr. Hyman's three week radio silence, Mr. Newberg, Mr. Passin and Mr. Hyman's then co-counsel, Mr. Madonia[1] set a deposition scheduling conference for February 22. Mr. Hyman subsequently stated he would call Mr. Passin the next day, but then again failed to respond to any subsequent communication until the evening of February 21, when he sent an e-mail stating that he "just cannot make" the conference call set for the next morning. *Id.* at ¶ 11, Exh. 3. On February 22, 2013, Mr. Hyman produced gravely deficient discovery responses. *Id.* at ¶ 12. This was only the beginning of months of delay tactics and shenanigans by Plaintiff and Mr. Hyman.

### A. The Deposition of James Stonich

For months, Defendants contacted Mr. Hyman in an attempt to obtain dates on which Plaintiff was available for deposition. Mr. Hyman ignored all communications from the parties on this topic until March 8, 2013. *Id.* at ¶ 12, 13. Due to Mr. Hyman's failure to provide dates for his client's deposition, on February 28, 2013, Defendants noticed the deposition of Plaintiff James Stonich for March 22, 2013 in Los Angeles. *Id.* at ¶ 14. Mr. Hyman ignored Defendants' repeated emails confirming Mr. Stonich's availability for this date until Sunday March 10, 2013, when he stated for the first time that his client was leaving the country the next day and would not be returning until March 25, 2013. *Id.* at ¶ 15, 17 Exh. 4, 5. Then, for weeks, Mr. Hyman ignored any further communication on the topic of his client's deposition, even as Defendants offered alternative dates and warned Mr. Hyman that if he did not offer any alternatives, the deposition would proceed as scheduled. Meanwhile, Mr, Hyman simultaneously drafted repeated emails filled with personal and unprofessional attacks. *Id.* at ¶ 19-22, Exh. 6. This is part and parcel of Plaintiff's counsel's repeated attempts to derail the taking of his client's deposition.

---

[1] Mr. Madonia was Mr. Hyman's co-counsel at the time, but is now solely counsel for Plaintiff McCarthy.

- 8 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

It was only after being threatened with sanctions for Plaintiff's failure to appear that Mr. Hyman finally agreed to produce his client for deposition on Thursday April 18, 2013. *Id.* at ¶ 23. On Thursday, April 11, 2013, the first and only deposition in this case so far was taken: the deposition of Plaintiff McCarthy, who was no longer represented by Mr. Hyman. *Id.* at ¶ 24. On April 12, 2013, Mr. Hyman again suggested Mr. Stonich would not appear for his deposition, and, for the first time, began implying that Mr. Stonich's failure to appear was tied to the fact that Defendants had not produced financial statements prior to 2008— despite the fact that the parties had agreed such statements would only be produced three weeks subsequent to the Court denying Defendants' Motion to Dismiss on this issue, if it were indeed denied. *Id.* at 26, Exh. 7; 2:12-cv-02099-MMM-PLA, Docket No. 131, *Defendant's Notice of Motion and Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6) Plaintiffs' Second Amended Complaint to the Extent Plaintiffs Seek to Recover Damages for Acts that Occurred Prior to the Three Year Limitations Period*. Because Mr. Hyman declared that Mr. Stonich would not be attending his April 18, 2013 deposition, the parties scheduled a meet and confer for April 16, 2013 on sanctions. *Id.* at 27. It was at this meet and confer that the present April 24, 2013 deposition date was set. *Id.* at 28. Dates were set for the depositions of Defendants' witnesses as well[2]. *Id.* at 28, Exh. 8.

Despite this clear agreement between the parties, on April 18, 2013, Mr. Hyman again insisted that Stonich would not appear for his deposition unless Plaintiffs' produced the pre-2008 financial statements. *Id.* at 29, Exh. 9. He further stated he would not produce his client for deposition in the absence of a court order. *Id.* Two hours later, subsequent to a phone call with Mr. Passin, Mr. Hyman withdrew this letter. *Id.* at 30, Exh. 10. Four days later, on April 22, 2013, Mr. Hyman re-issued his

---

[2] Up until this point, Defendants had been attempting to, and had repeatedly offered, to make their client's available for deposition. However, in the interest of judicial economy, the history of these attempts are not recited in full herein.

- 9 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

letter, and announced unequivocally that Mr. Stonich would not be appearing for his agreed upon April 24 deposition. *Id.* at 31, Exh. 11. Defendants' counsel stated that they would seek sanctions if Mr. Stonich did not appear. *Id.* at 32, Exh. 12. Mr. Hyman then abruptly stated in an email dated April 23 that Mr. Stonich would appear, but not until 12:30 pm, and that he was imposing a limit of 3.5 to 4 hours for Mr. Stonich's deposition, due to a "personal, family matter." *Id.* at 33, Exh. 13. Defendants' counsel again reiterated that Mr. Hyman cannot keep making up rules. Mr. Hyman then replied he could not arrive at 9 am because of a "hearing", but that he would arrive afterwards, presumably around 10:15. *Id.* at 34, Exh. 14. In sum, Mr. Stonich has refused to appear for two scheduled depositions, threatened to fail to appear for a third time, and after finally appearing for his deposition today he abruptly left after only two hours of testimony claiming to be ill. *Id.* at 35.

### B. The Deposition of Ned Babb

Plaintiffs failed to provide complete contact information for any of the witness identified in their Federal Rule 26 initial disclosures despite repeated requests for such information (the "Initial Disclosures"). *Id.* at 36. Through online research, Defendants were able to locate Ned Babb. *Id.* at 37. Defendants' counsel contacted Mr. Babb and attempted to schedule a mutually convenient deposition date, to no avail. *Id.* at 38. On March 8, 2013, Mr. Hyman for the first time stated that he now represents Mr. Babb, and all communications to Mr. Babb should go through him. *Id.* at 39, Exh. 15. Mr. Newberg then asked Mr. Hyman if Mr. Babb could make himself available for an April 2, 2013 or April 4, 2013 deposition. *Id.* at 40, Exh. 16. Mr. Hyman did not respond to that communication nor the numerous subsequent communications requesting Mr. Babb's availability for deposition. *Id.* at 41. On March 17, 2013, Mr. Passin sent Mr. Hyman an email stating that if Mr. Hyman did not provide dates for Mr. Babb's availability, Defendants would subpoena Mr. Babb for deposition on April 2, 2013 or April 4, 2013. *Id.* at 42, Exh. 17. After Mr. Babb

- 10 -
DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

was served, Mr. Hyman stated that Mr. Babb would not attend. Finally, after sanctions were again threatened by Defendants' counsel, Mr. Hyman agreed that Mr. Babb would appear for his deposition on April 25, 2013. *Id.* at 43, Exh. 18.

### C. Defendants' Depositions

Despite Mr. Hyman's fabrications to the contrary, not a single Defendant has failed to appear for a deposition. *Id.* at 44. The parties agreed that the depositions of Plaintiffs would take place prior to the depositions of Defendants, and Defendants' counsel has been trying to establish a mutually convenient deposition schedule since January. *Id.* at 45, 47, Exh 1. Regardless, without once asking for a single potential deposition date for Defendants, and in contravention of the parties' prior agreement, Mr. Hyman issued eight different notices of deposition for the six defendants and two third-parties. *Id.* at 48, 49, Exh. 19. On March 26, 2013, before any of the scheduled deposition dates, Mr. Hyman *withdrew* all deposition notices. *Id.* at 50, Exh. 18 at p. 84. <u>There has never been a single noticed deposition for which Defendants have failed to appear</u>. *Id.* at 52.

### D. Protective Order and Defendants' Production of Documents

Defendants have at all times maintained that various financial documents were highly confidential and would not be produced in the absence of a protective order. *Id.* at 53. Plaintiffs' counsel agreed to this in writing on several occasions. *Id.* at 54, Exh. 20. Plaintiffs' waited over a month to respond to or comment on a draft protective order prepared by Defendants for this purpose. *Id.* at 55-57, Exh. 21, 2. After further delay by Mr. Hyman, which dragged on for months (the details of which are set forth in the Declaration of Brad Newberg), Mr. Hyman finally signed the final version of the protective order. *Id.* at 58-65, Exh. 18 - 26. On April 10, 2013, the protective order was signed by the Magistrate Judge. *Id.* at 66. Two days later, on April 12, 2013, Defendants produced their highly confidential financial documents by hand, on a CD, on the agreed upon date. *Id.* at 68-69.

DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

60676818.2

### E. Pre-2008 Documents

The parties specifically agreed that, *if* the Court denied Defendants' motion, Defendants would produce financial documents going back 25 years, as Plaintiffs had requested, to the extent such documents exist (many do not). *Id.* at 73. All parties understood the tremendous burden of searching for and producing over 100,000 pages of documents stretching back over 25 years, and, as a result, agreed that the production would only be necessary if and when the Court denied Defendants' motion. *Id.* at 75. This agreement was confirmed orally, in writing, and was discussed again at the March 26 meet and confer. *Id.* at 74, Exh. 18 at 31-32, 67-68. Moreover, as set forth above, Mr. Passin stated that in the event the Court denied the pending Motions to Dismiss, he was optimistic that his clients would be able to produce the documents prior to May 3.

### F. Mr. Hyman's Failure to Meet and Confer and Plaintiff's Destruction of Documents

Mr. Hyman has not only failed to properly meet and confer on the discovery issues he raises, he refuses to meet and confer on other discovery issues raised by Defendants, including potential alteration and destruction of evidence by Mr. Stonich. *Id.* at 78 – 89. In addition to a copyright registration document, which appears to be altered (potentially by Plaintiff) [*Id.* at 90], Plaintiff and his counsel also represented that certain categories of documents did not exist despite obvious evidence to the contrary. *Id.* 93-94. The details of Plaintiffs' destruction of documents are set forth in a letter from Mark Passin to Plaintiffs dated February 20, 2013. *Id.* at 92, Exh. 33.

## VII. Conclusion

For the foregoing reasons, Defendants respectfully request that Plaintiff's Ex Parte Application be denied.

DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

REED SMITH LLP

By: */s/ Dominique H. Pietz*
    Brad R. Newberg (*pro hac vice*)
    Kathyleen A. O'Brien (SBN 94218)
    Dominique H. Pietz (SBN 260716)
    Attorneys for Defendants Capitol Records LLC and EMI Music Marketing (a DBA of Capitol Records, LLC)

ROBINS, KAPLAN, MILLER & CIRESI, LLP

By: _____
    Mark D. Passin (SBN 101195)
    Daniel G. Stone (SBN 265397)
    Attorneys for Bruce Anthony Johannesson, Brett Michaels, Rikki Rockett, Bobby Dall, and Sweet Cyanide, Inc.

DEFENDANTS' JOINT OPPOSITION TO EX PARTE APPLICATION

60676818.2